**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **BESSIE M. DECKARD,** § | |
| § | |
| **Plaintiff,** § | |
| § | Civil Action No. 3:04-CV-1287-M |
| v. § | |
| § | |
| **COMMISSIONER OF SOCIAL SECURITY,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and an Order of the Court in implementation thereof, subject cause has been referred to the United States Magistrate Judge. Before this Court are Plaintiff's *Motion for Summary Judgment Brief in Support of Motion for Summary Judgment*, filed October 15, 2004, *Commissioner's Motion for Summary Judgment* and *Defendant's Response to Brief in Support of Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment*, filed December 17, 2004, and *Plaintiff's Reply to the Brief of the Defendant*, filed January 6, 2005. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.

**I.  BACKGROUND**[1]

*A.  Procedural History*

Bessie M. Deckard ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

Title XVI of the Social Security Act. On October 12, 2001, Plaintiff filed an application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act. (Tr. at 83-85.) Plaintiff claimed she was disabled due to depression and asthma. (Tr. at 87.) Her application was denied initially and upon reconsideration. (Tr. at 66-69; 71-77). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 63.) A hearing, at which Plaintiff personally appeared and testified, was held on July 8, 2003. (Tr. at 238-68). On June 30, 2004, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 22-29.) The Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) Plaintiff then brought this timely appeal to the United States District Court pursuant to 42 U.S.C. § 405(g).

### B.     *Factual History*

   1.     Age, Education, and Work Experience

Plaintiff was born on September 20, 1957. (Tr. at 243.) She completed tenth grade. *Id*. Her past relevant work experience includes employment as a grocery store stacker, toy assembler, food service worker, and a receptionist. (Tr. at 261.)

   2.     Medical Evidence

Plaintiff was seen at Parkland Hospital on June 14, 2001, for pain in her left knee. (Tr. at 228.) Plaintiff had mild to moderate effusion and decreased range of motion. *Id.* An x-ray revealed moderate knee effusion and mild degenerative changes with joint space loss. (Tr. at 218.) Plaintiff's diagnosis was internal knee derangement, osteoarthritis, and degenerative joint disease. (Tr. at 227.) At a return visit on December 20, 2001, Plaintiff reported that she took Motrin as needed for knee pain. (Tr. at 224.)

On August 21, 2001, Plaintiff was evaluated at Dallas Metrocare Services for depressive

symptoms. (Tr. at 128.) Plaintiff reported having no previous mental health treatment. *Id.* Plaintiff was diagnosed with major depressive disorder, recurrent, severe, as well as polysubstance dependence (alcohol, marijuana, crack cocaine.) *Id.* Plaintiff had suicidal ideation with no plan, poor appetite, and sleep disturbances. (Tr. at 127.) Her Global Assessment of Functioning ("GAF") was 45. *Id*. She was prescribed Celexa and referred for group and individual therapy. (Tr. at 128.) Plaintiff continued to seek regular treatment at Dallas Metrocare Services.

On January 19, 2002, Plaintiff was examined by Peter C. Holm, M.D., a consultative examiner. (Tr. at 149-53.) Plaintiff had left her previous employment as a sacker at a grocery store after six weeks due to stress and lack of work hours. (Tr. at 149.) She told Dr. Holm that she was unable to return to work due to leg pain. *Id*. Plaintiff had been depressed since she was a teenager. *Id.* Plaintiff reported she had not experienced any suicidal ideation for several weeks. *Id.* Plaintiff was being treated with Celexa which had helped improve her mood. *Id.* However, Plaintiff was still depressed and irritable and had insomnia, hypersomnia, low energy, diminished enjoyment of previously pleasurable activities, isolativeness, and diminished attention/concentration. *Id.* Plaintiff was somewhat tearful, but cooperative and alert during the examination. (Tr. at 151.) Plaintiff's ability to relate was diminished secondary to being moderately less spontaneous, her mood was depressed and irritable, and her affect was moderately blunted and sometimes tearful. *Id.* Plaintiff's thinking was logical, coherent, and relevant without looseness of associations. *Id.* Plaintiff reported that she performed a few household chores. *Id.* Her ability to cook, shop, and perform chores was limited by depression, leg pain, diminished attention/concentration, and diminished motivation. *Id.* In the realm of social function, Dr. Holm found Plaintiff to be isolative and irritable. *Id.* Her concentration was diminished, her persistence was adequate, and her pace was average. (Tr. at 152.)

Dr. Holm diagnosed major depression, recurrent, severe. *Id.* Plaintiff's prognosis was guarded. *Id.* Dr. Holm noted that medication had been helpful but she continued to struggle with depression. *Id.*

At a visit to Dallas Metrocare Services on January 28, 2002, Plaintiff reported experiencing auditory hallucinations. (Tr. at 208.) By February 17, 2002, Plaintiff reported having been sober for four months. (Tr. at 207.) In addition, Stelazine had reduced her psychotic symptoms. (Tr. at 208.) Although she felt "down" at times, there was no "flagrant depressive decomp[ensation]." *Id.* On this date, Plaintiff's GAF was assessed at 50. (Tr. at 201.)

On January 17, 2003, Plaintiff reported seeing dead people at night for the previous seven to nine days. (Tr. at 190.) Her Stelazine was increased and, by February 14, 2003, Plaintiff reported decreased psychotic symptoms, although she still had intermittent visual hallucinations. *Id.* On March 17, 2003, Plaintiff reported that she was better, but that she had intermittent thought confusion and infrequent auditory hallucinations. *Id.* On May 19, 2003, Plaintiff reported that the visual hallucinations were almost gone. (Tr. at 179.)

      3.      <u>Hearing Testimony</u>

At the hearing on July 8, 2003, the ALJ heard testimony from Plaintiff and Evelyn Hartman, Vocational Expert ("VE"). (Tr. at 238-68.) Plaintiff was represented by counsel at the hearing. (Tr. at 238.)

Plaintiff testified that she was 45 years old at the date of the hearing. (Tr. at 243.) She completed tenth grade. *Id.* Plaintiff's past work experience included work as a bagger, toy assembler, food service worker, laundry sorter, and receptionist. (Tr. at 244-46, 261.)

Plaintiff testified that she was being treated monthly for depression. (Tr. at 249.) She stated that she cried all the time for no reason and did not sleep well. (Tr. at 250.) She did not socialize.

(Tr. at 251.) Plaintiff said she often heard voices and dreamed about dead people when things were not going well in her life. (Tr. at 251-53, 257.) Plaintiff also complained of problems with her legs and asthma. (Tr. at 249, 254, 258.)

The VE testified that Plaintiff was a younger individual for Social Security purposes and that her education was limited or less. (Tr. at 261.) When asked to respond to a hypothetical question which assumed an individual of Plaintiff's age, education, and work experience, who retained the capacity for non-complex tasks under normal supervision, the VE opined that such an individual could perform Plaintiff's past relevant unskilled work. (Tr. at 263.)

### C.     *ALJ's Findings*

The ALJ issued his decision denying benefits on January 30, 2004. (Tr. at 22-29). In his findings, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (Tr. at 26.) The ALJ concluded that Plaintiff had severe impairments consisting of degenerative joint disease of the left knee and major depressive disorder. *Id.* However, the ALJ found that her impairments did not meet or equal the criteria of any of the listed impairments. *Id.* The ALJ found Plaintiff's allegation of total inability to work inconsistent with the medical and other evidence of record and not fully credible. (Tr. at 28.) In making his credibility assessment, the ALJ noted Plaintiff's ability to perform a few household chores, her ability to care for personal needs, and the objective medical evidence indicating only mild degenerative changes in her knee. *Id.* The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform unskilled light work requiring lifting up to twenty pounds occasionally and ten pounds frequently, and sitting, standing and walking approximately six hours in an eight hour workday. *Id.*

Finding that Plaintiff's past work as an assembler, laundry sorter, and switchboard operator did not require performance of work activities precluded by her RFC, the ALJ concluded that Plaintiff could return to her past work. *Id.* Accordingly, the ALJ found that Plaintiff was not entitled to receive disability benefits. *Id.*

## II.   ANALYSIS

### A.   *Legal Standards*

#### 1.   *Standard of Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).

#### 2.   *Disability Determination*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638,

640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may

be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### B.   *Issues for Review*

Plaintiff alleges that substantial evidence does not support the Commissioner's finding that she was not disabled because:

(1) The ALJ failed to consider the vocational significance of all of Plaintiff's impairments because:

   (a) The ALJ failed to consider Plaintiff's moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace on her ability to maintain employment;

   (b) The ALJ failed to explain his reasons for refusing to consider a state agency physician's opinions as to Plaintiff's moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace;

   (c) The ALJ failed to include all recognized limitations in the hypothetical question propounded to the VE;

   (d) The ALJ failed to obtain a medical source statement concerning Plaintiff's knee impairment; and

(2) The ALJ did not properly assess Plaintiff's credibility.

### C.   *Issue One: Vocational Significance of Plaintiff's Impairments*

Plaintiff alleges that the ALJ erred in failing to consider the vocational significance of all of Plaintiff's exertional and non-exertional impairments. (Pl.'s Br. at 8.) Plaintiff contends that the ALJ should have considered the impact of Plaintiff's moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace on her ability to maintain employment. (Pl.'s Br. at 9.) In addition, Plaintiff asserts that the ALJ failed to explain his reasons

for refusing to consider a state agency physician's opinion as to Plaintiff's limitations. *Id.* at 12. Plaintiff also complains that the ALJ did not include all of the non-exertional limitations which he accepted in his hypothetical question. *Id.* at 11. Lastly, Plaintiff asserts that the ALJ erred in failing to call a medical expert to testify as to the severity of Plaintiff's knee impairment. *Id.* at 12-13.

  1. <u>Ability to Maintain Employment</u>

Plaintiff asserts that the ALJ erred in failing to consider the impact of Plaintiff's moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace on her ability to maintain employment. (Pl.'s Br. at 9.) In setting forth Plaintiff's mental RFC, the ALJ stated:

> Her moderate limitation in the areas of maintaining social functioning and in maintaining concentration, persistence or pace does not preclude the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and to adapt to changes in a routine work setting. Her remaining abilities and residual functional capacity comport with the mental demands of competitive remunerative, unskilled work. Since the claimant can meet these demands, I find she had a residual functional capacity for unskilled work.

(Tr. at 27.)

"A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986). Ordinarily, whether a plaintiff can maintain employment for a significant period of time will be included in the analysis of her ability to obtain employment. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). However, under certain circumstances, separate consideration of a plaintiff's ability to maintain employment is required. *Id.* Such circumstances exist when the record indicates that a claimant can

only work for short periods of time. *Id.*

The ALJ in this case determined Plaintiff's mental RFC based upon his findings as to her limitations in social functioning and in concentration, persistence, and pace. From this RFC, he found that Plaintiff retained the RFC for unskilled work. The ALJ did not make a separate finding as to Plaintiff's ability to maintain employment. However, in evaluating Plaintiff's RFC he cited to 20 C.F.R. § 416.945, the regulation which defines RFC and notes that one's RFC includes the capacity for "work activity on a regular and continuing basis." (Tr. at 26.) Additionally, Plaintiff has not pointed the Court to any evidence of record indicating that she is only able to work for short periods of time, which would show a difficulty in maintaining employment. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (holding that when the ALJ cited to the RFC regulation and there was an absence of evidence that a claimant's ability to maintain employment was compromised, there was no error in failing to separately address the ability to maintain employment). For these reasons, the Court finds no error in the failure to make a separate finding as to Plaintiff's ability to maintain employment.

    2.    <u>State Agency Physician</u>

Plaintiff asserts that the ALJ erred in failing to explain his reasons for refusing to consider a state agency physician's opinion as Plaintiff's moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, and pace on her ability to maintain employment. (Pl.'s Br. at 12.)

Although ALJs "are not bound by any findings made by State agency medical or psychological consultants," they must consider such findings as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). An ALJ may not ignore the opinions of state agency medical

consultants and must explain the weight given those opinions in their decisions. SSR 96-6p. However, even where the record demonstrates procedural improprieties, a court will not remand unless the substantial rights of a party have been affected. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is appropriate only if the improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.*

In her brief, Plaintiff initially states that "the ALJ adopted the opinion of the state agency physician with regard to maintaining concentration, persistence and pace and maintaining social functioning . . . ." (Pl.'s Br. at 10.) Later, Plaintiff claims that "the ALJ did not provide any basis for his failure to consider the specific limitations in sustained concentration and persistence, social interaction and in adaptation, reported by the state agency reviewing physician." *Id.* at 12. As Plaintiff concedes that the ALJ did adopt the opinion of the state agency physician, it appears that Plaintiff objects to the ALJ's failure to include the state agency physician's notation as to each of the subcategories included on the Mental Residual Functional Capacity Assessment. However, Plaintiff does not state which notations she believes should have been addressed or how the addition of that information would have changed the outcome of the disability determination. Nor does Plaintiff provide support for the assertion that the ALJ is required to address each notation on the form. Notably, in making the functional capacity assessment, the state agency physician stated "claimant retains capacity for non-complex tasks under normal supervision." (Tr. at 171.) As Plaintiff does not show that this assessment or the remainder of the state agency physician's findings conflict with the ALJ's finding as to Plaintiff's RFC, the Court finds no error.

3. Hypothetical Question

Plaintiff contends that the ALJ erred in failing to include Plaintiff's limitation in social functioning in the hypothetical question propounded to the VE. (Pl.'s Br. at 10.) Additionally, Plaintiff claims that the VE's testimony indicated that someone with Plaintiff's limitations in maintaining concentration, persistence, and pace would be unable to perform Plaintiff's past work. *Id.*

The ALJ has a duty to fully and fairly develop the facts relevant to a claim for benefits. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Failure to develop an adequate record is not per se grounds for reversal. *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). Plaintiff must show that Plaintiff "could and would have adduced evidence that might have altered the result." *Id.* To establish that work exists for a claimant, the ALJ relies on the medical-vocational guidelines or the testimony of a VE in response to a hypothetical question. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A hypothetical question posed by an ALJ to a VE must reasonably incorporate all the claimant's disabilities recognized by the ALJ and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question. *Bowling*, 36 F.3d at 436. A claimant's failure to point out deficiencies in a hypothetical question does not "automatically salvage that hypothetical as a proper basis for a determination of non-disability." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden of proof to show that despite his impairment the claimant could perform available work. *Id.* at 708.

In propounding a hypothetical question to the VE, the following exchange occurred:

ALJ: [A]ssume the person of her age, education and work experience had – her judgment was okay and her memory was okay and she was fully oriented.

12

    She would think logical [sic], coherently and she thought relevant [sic] without looseness of associations. Would a person with those abilities be able to perform what is described as unskilled work in the – in your field?

VE:  I would say yes, Your Honor. Unskilled work at the 2 level, which he [sic] has done – preponderance of for past relevant work, I think would not be mentally impacted by if, if the person every [sic] did those things that you just outlined.

ALJ:  Okay. Let's assume that a person had those abilities and she retained the capacity for non-complex, non-complex tasks under normal supervision. I take it that, that would also, even more so, indicate she can do her past relevant work, the unskilled 2 levels?

VE:  Yes, Your Honor.

(Tr. at 263.) As noted in Section C, 1 above, in his decision concerning Plaintiff's mental RFC, the ALJ specifically noted Plaintiff's moderate limitation in social functioning and moderate limitation in concentration, persistence, and pace, and concluded that despite that limitation her mental RFC "does not preclude the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and to adapt to changes in a routine work setting." (Tr. at 27.) Thus, in setting forth Plaintiff's mental RFC, the ALJ provided further interpretation of the impact of Plaintiff's limitations in the areas of social functioning and concentration, persistence, and pace on her ability to perform work-related functions. The ALJ concluded that those limitations did not negatively impact Plaintiff's ability to perform work with simple instructions and to respond appropriately to supervisors and coworkers. As the ALJ's conclusions as to the impact of Plaintiff's limitations on her mental RFC were included in the hypothetical question, the Court finds that the hypothetical question did incorporate all of the restrictions recognized by the ALJ.

  Plaintiff claims that the VE's response to the additional questions posed by Plaintiff's counsel show that an individual with Plaintiff's limitations as to concentration, persistence, and pace

13

would be unable to maintain employment. (Pl.'s Br. at 10.) However, the questions posed by Plaintiff's counsel included interpretations of the impact of Plaintiff's limitations not recognized by the ALJ. Specifically, counsel's questions assumed that Plaintiff's moderate difficulty in maintaining concentration, persistence, and pace equated to severe problems maintaining concentration, persistence, or pace up to one-third of the time. (Tr. at 264.) In response, the VE stated that such severe problems would make it difficult to maintain employment. *Id.* However, as noted above, in setting forth Plaintiff's mental RFC the ALJ did not find that Plaintiff's limitations impacted her ability to work so severely. Although counsel's attempt to quantify the meaning of a "moderate" limitation was clearly an attempt to assist the VE in making her opinion, counsel's definition was clearly not accepted by the ALJ. In response to the ALJ's question which incorporated his findings as to Plaintiff's limitations, the VE opined that Plaintiff could return to her past unskilled work.

For the aforementioned reasons, the Court concludes that there was no error in the ALJ's hypothetical question propounded to the ALJ and that the VE's response supports the ALJ's conclusion that Plaintiff could return to her past unskilled work.

4.     Medical Source Statement

Plaintiff argues that a medical source statement was necessary to assist the ALJ in making his RFC assessment as to Plaintiff's knee limitations. (Pl.'s Br. at 12-13.)

When an ALJ makes his determination as to a claimant's RFC, he should usually request a medical source statement describing the types of work that the claimant is still capable of performing. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (remanding to the ALJ when there was a vast amount of evidence that the plaintiff had back problems and no evidence regarding the

14

effect of the problems on his ability to work). However, the record is not made incomplete by to the absence of such a statement where the ALJ's decision is supported by substantial evidence in the record. *Id.* Additionally, even when the failure to obtain a medical source statement does create error, reversal is not required absent a demonstration of prejudice. *Gutierrez v. Barnhart*, 2005 WL 1994289, *8 (5th Cir. 2005).

The evidence in the record shows that Plaintiff was treated briefly for knee pain. (Tr. at 224, 227-28.) An x-ray revealed moderate knee effusion and mild degenerative changes with joint space loss. (Tr. at 218.) The diagnosis was internal knee derangement, osteoarthritis, and degenerative joint disease. (Tr. at 227.) There is no further evidence in the record concerning the impact of Plaintiff's knee impairment on her ability to work. Notably, she was not receiving regular treatment for this condition and she was treating it with over-the-counter medication as needed. (Tr. at 224.) The only testimony at the hearing concerning Plaintiff's ability to stand was Plaintiff's statement that she would not be able to handle a full time job due to her depression "[a]nd my standing. I'm – I don't know what's wrong in my legs." (Tr. at 249.) The medical evidence in the record supports the ALJ's determination that Plaintiff's knee impairment permitted Plaintiff to perform light work. Plaintiff does not explain how a medical source statement would have changed the outcome of the case. Additionally, Plaintiff does not allege that she was prejudiced by the failure to obtain a medical source statement. For these reasons, the Court concludes that the ALJ did not err in failing to obtain a medical source statement concerning the limitations imposed by Plaintiff's knee impairment.

### D.     *Issue Two: Credibility Assessment*

Plaintiff asserts that the ALJ failed to properly evaluate her credibility. (Pl.'s Br. at 13-16.)

15

In particular, Plaintiff states that the ALJ erred in failing to consider: (1) the fact that her hallucinations were precipitated and aggravated by stress; (2) her testimony concerning her limited social contacts, lack of stamina, and isolativeness, and (3) the limitations caused by Plaintiff's arthritic condition. *Id.* at 15.

"Credibility determinations are generally the province of the ALJ and are entitled to deference." *Lam v. Apfel*, 2000 WL 354393, *4 (N.D. Tex. Apr. 5, 2000). Therefore, courts will reverse an ALJ's credibility determination only if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Social Security regulations instruct ALJs to conduct a seven-factor analysis when determining the credibility of a claimant's subjective complaints of pain. 20 C.F.R. § 404.1529(c)(3). Those factors are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication received; (6) other measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions. *Id.* The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "If on [42 U.S.C.] § 405(g) review the court finds that the ALJ followed the proper procedures and considered the relevant factors, the ALJ's determination is ordinarily conclusive." *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1027 (E.D. Wis. 2004). However, "since substantive regulations have the force and effect of law, failure to employ the seven-factor analysis when assessing credibility of subjective complaints constitutes legal error." *Parker v. Barnhart*, 431 F. Supp. 2d 665, 672 (E.D. Tex. 2006).

16

"Such an error warrants a reversal unless harmless error analysis indicates that 'remand would be an idle and useless formality.'" *Id.* (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)).

In this case, the ALJ provided specific reasons for his finding that Plaintiff's allegations of work-precluding pain were not fully credible. He noted that although Plaintiff complained of pain in her legs and knees, she reported performing a few household chores and having no difficulty caring for her personal needs, and that x-rays indicating mild degenerative changes did not indicate an inability to perform light work. (Tr. at 28.) Plaintiff had only some treatment for osteoarthritis of the knee. *Id.* Basing his finding on the record in its entirety, the ALJ concluded that Plaintiff was able to perform unskilled light work. *Id.* Because the ALJ supplied reasons for his credibility determination as to Plaintiff's complaints of physical pain, the Court cannot find that the determination was patently wrong.

Plaintiff's remaining concerns relate to evidence concerning her mental limitations. Notably, the ALJ did not find Plaintiff's allegations about her mental limitations not credible. In fact, the ALJ noted that medical evidence supported Plaintiff's claims that she had visual and auditory hallucinations at night. (Tr. at 27.) Although the ALJ did not specifically note Plaintiff's limited social contacts, lack of stamina, and isolativeness, there is no indication that this omission negatively impacted his assessment of Plaintiff's credibility. Because the ALJ appears to have found Plaintiff's allegations regarding her mental limitations to be credible, there is no error.

For these reasons, the Court concludes that substantial evidence supports the ALJ's credibility determination.

### III. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

**SO RECOMMENDED,** on this **12th** day of March, 2007.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE